# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| NATIONAL PRODUCTION WORKERS UNION SEVERANCE TRUST FUND, LOUIS PISSIOS, Trustee of the National Production Workers Union Severance Fund )<br>)<br>)<br>)<br>) | No. 02 C 7523<br>Judge Joan H. Lefkow |
| Plaintiffs, )<br>) | |
| vs. )<br>) | |
| UNITED MAINTENANCE CO., INC., UNITED TEMPS, UNITED NATIONAL MAINTENANCE, )<br>)<br>)<br>) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs, National Production Workers Union Severance Trust Fund (the "Severance Fund"), and Louis Pissios, Trustee of the Severance Fund, filed this suit against defendants United Maintenance Co., Inc. ("United Maintenance Company"), United Temps ("Temps"), and United National Maintenance ("National"), to recover allegedly delinquent contributions to the Severance Fund pursuant to Sections 502(a), (e) and (f) of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§ 1132(a), (e) and (f). This court's jurisdiction is invoked under 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e)(1) & (f). Before the court are cross-motions for summary judgment. For the reasons set forth below, plaintiffs' motion for summary judgment is granted and defendants' motion is denied with respect to National and Temps. Defendants' motion is granted with respect to United Maintenance Company.

1

## SUMMARY JUDGMENT STANDARD

Summary judgment obviates the need for a trial where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). To determine whether any genuine fact exists, the court must pierce the pleadings and assess the proof as presented in depositions, answers to interrogatories, admissions, and affidavits that are part of the record. Fed R. Civ. P. 56(c) Advisory Committee's notes. The party seeking summary judgment bears the initial burden of proving there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In response, the non-moving party cannot rest on bare pleadings alone but must use the evidentiary tools listed above to designate specific material facts showing that there is a genuine issue for trial. *Id.* at 324; *Insolia v. Philip Morris Inc.*, 216 F.3d 596, 598 (7th Cir. 2000). A material fact must be outcome determinative under the governing law. *Insolia*, 216 F.3d at 598-99. Although a bare contention that an issue of fact exists is insufficient to create a factual dispute, *Bellaver v. Quanex Corp.*, 200 F.3d 485, 492 (7th Cir. 2000), the court must construe all facts in a light most favorable to the non-moving party as well as view all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). On cross-motions for summary judgment, the court must consider the merits of each motion and assess the burden of proof that each party would bear on an issue at trial. *Santaella v. Metro. Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir. 1997). The mere filing of cross-motions for summary judgment does not establish that there is no genuine issue of material fact. *M. Snower & Co. v. United States*, 140 F.2d 367, 369-371 (7th Cir. 1944).

## FACTS

National Production Workers Union Local 707 (the "Union") is a labor organization representing employees regarding terms and conditions of employment. (Pfs. L.R. 56.1 ¶ 1). The Union sponsors a severance benefit fund which receives employer contributions and provides benefits to employees upon the termination of their employment. (Monaco Aff. ¶ 2). Employers who enter into contracts with the Union make contributions to the Severance Fund based on hours of work and a negotiated hourly rate. (*Id.* ¶ 3).

United Maintenance Company, Temps and National operate as part of a group of commonly owned companies involved in providing temporary employees to various businesses. (Defs. L.R. 56.1 ¶¶ 1-7). National contracts with trade show and convention operators to provide temporary employees to provide set-up, tear-down, and cleaning services. (*Id.* ¶ 2). Temps employs individuals and leases them to third-parties in a variety of industries. (*Id.* ¶ 4). National does not employ its own employees but rather contracts with third-parties for temporary employees. (*Id.* ¶ 3). At times, National leases its temporary employees from Temps. (*Id.* ¶ 5). (The LR 56.1 statements do not describe the operations of United Maintenance Company, although it is referred to in the papers as a payroll agent for Temps and National and a subcontractor of National for convention janitorial work.)

On August 1, 1998 and July 5, 1999, respectively, National and Temps executed separate Master Labor Agreements ("MLAs") with the Union. (*Id.* ¶ 8). Each of the MLAs defined specific groups of participating employees, specifically, convention janitorial, building janitorial, and non-skilled convention labor. Pfs. Ex. 3; Defs. Ex. B.

Temps's "Recognition" clause was slightly broader, covering convention

3

janitorial, building janitorial, and non-skilled janitorial labor, as well as "any other types of labor that may be hired by Temps on a permanent basis." Pfs. Ex. 2; Defs. Ex. C.

Articles V of the MLAs also established the employers' contribution obligations to the Severance Fund. The MLA for National set a rate of $.05 per hour for every hour worked or paid for on behalf of eligible employees and authorized the conduct of audits to facilitate compliance with the MLA.

Plaintiffs and Temps offer competing documents as evidence of the MLA between them. The versions principally differ with respect to Article V, Section 3(a). Plaintiffs' version provides:

> Effective July 5, 1999, the Employer shall contribute the sum of $.05 per hour for every hour worked or paid for, on behalf of each eligible employee.

In contrast, Temps's version provides:

> Effective _____, _____ the Employer shall contribute the sum of $_____ per hour for every hour worked or paid for, on behalf of each eligible employee.

An Amendment to the MLA, executed on June 5, 2000 for Temps' employees working at Five-Star Laundry, Inc. (Defs. L.R. 56.1 ¶ 14) provided, in addition to wage and benefits terms, that Temps was to pay $.05 per hour per employee into the Severance Fund. No amendment respecting any other work site was ever negotiated between the Union and National or Temps. *(Id.* ¶ 15.)

By 2002, the Severance Fund had not received any contributions or reports from either National or Temps. (Pfs. L.R. 56.1 ¶ 11). In April 2002, the Severance Fund administrator contacted both employers and initiated discussions regarding amounts

4

allegedly owed to the Severance Fund. (*Id.*) On April 11, 2002, National's President Richard Simon issued a check in the amount of $2,555.21 payable to the Severance Fund along with a listing of employees at various work sites. (*Id.* ¶ 9). Defendants calculated this payment on the basis of hours worked over a one-month period for employees of United Maintenance Company while it "was engaged as a subcontractor to [National] for convention janitorial work." (Pfs. Exh. 11, Defs. Answer to Int. No. 4). Defendants further explained, "After Local 707 identified a dispute concerning the severance fund obligations, the check was offered as an interim payment while the parties worked out their dispute over the coverage and contract issues." (*Id.*).[1]

In any event, in July 2002, the Severance Fund initiated an audit of National. (*Id.* ¶ 11, Pfs. Ex. 7). The auditor discovered that National had only four employees but was paying Temps "significant money for subcontractor services." (Pfs. Ex. 8, ¶ 4). After the initiation of this lawsuit, the audit commenced in January 2004. (*Id.* ¶ 12). A preliminary audit was completed for Temps based on the payroll records produced for the audit. This audit reflected contributions allegedly owed in the amount of $102,705.41 for all work performed by Temps during the period covered by the MLA. (*Id.* ¶ 14, Pfs Ex. 8 ¶ 8).

## DISCUSSION

In support of their demand for contributions, plaintiffs rely on ERISA section 515, 29 U.S.C. § 1145:

---

[1] The record is opaque as to what the dispute was. It appears, however, that all of the defendants took the position that they had no covered employees. National leased employees (from Temps) and Temps had, since signing the MLA and as least as of October 25, 2002, gone to employee leasing rather than straightforward employment. (Pfs. Ex. 11). On that basis, Temps requested that leased employees be excluded from the obligations of the MLA. (*Id.*).

5

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with the law, make such contributions in accordance with the terms and conditions of such plan or such agreement."

Section 515 entitles severance funds to "enforce the writings according to their terms." *Central States, Southeast & Southwest Areas Pension Fund v. Gerber Truck Serv., Inc.*, 870 F.2d 1148, 1149 (7th Cir. 1989) (*en banc*)). "The written word must prevail over subjective understandings unless one of those gaps 'crying out to be filled' exists or the agreement is genuinely ambiguous." *Pabst Brewing Co. v. Corrao*, 161 F.3d 434, 442 (7th Cir. 1998) (quoting *Gerber Truck Serv., Inc.*, 870 F.2d at 1149). Employers are thus obligated to make contributions only on behalf of those employees covered under the agreement. *Central States, Southeast & Southwest Areas Pension Fund v. Hartlage Truck Serv., Inc.*, 991 F.2d 1357, 1361 (7th Cir. 1993).

I. **Temps**

Plaintiffs contend that the MLA obligated Temps to contribute to the Severance Fund at the $.05 rate. Defendants contend that Temps owes nothing to the Fund because the MLA reserved certain material terms, such as fringe benefits and wages, to the negotiation and execution of separate amendments for each workplace where the Union was able to obtain majority support from the employees. Because no amendments were executed for the sites at issue under the audit, defendants deny liability to the Severance Fund.

Because the parties are unable to agree on which document is the actual MLA for

Temps, the court relies on defendants' version, Exhibit C, in reaching its conclusion that Temps is liable to the Fund.[2] Defendants are correct that an employer is bound to contribute to a union welfare plan only where there is an agreement to do so. Even with the blanks evident in Defendants' Exhibit C, however, there is no dispute that Temps and the Union signed the MLA, and there is no dispute that Temps agreed in Article V thereof to contribute to various funds, including the Severance Fund. Simon's affidavit notwithstanding, the MLA contains no requirement that site-specific amendments to the MLA were a necessary prerequisite to Temps' contribution obligation. *See Central States, Southeast & Southwest Areas Pension Fund v. McClelland, Inc.*, 23 F.3d 1256, 1258 (7th Cir. 1994) ("No matter what an employer and local union agree orally, the collective bargaining and contribution agreements establish the employer's obligation to the pension fund, which is not party to local understandings and limitations."). Neither is the fact that one amendment for the Five Star Laundry site was memorialized sufficient to establish that the MLA covered no one else. The MLA contemplates that each job contract will entail its own negotiated terms. It is plain enough that covered workers performed work at various sites at negotiated wages (and implicit that they were also covered under various benefit plans) throughout the term of the MLA. This can only

---

[2] Defendants attached four versions of an MLA to their motion, all dated July 5, 1999, including **Exhibit C**, which requires Temps to pay into the severance fund but leaves the effective date and amount blank. The document purports to have been executed by both Simon for Temps and by the Union's representative, Anthony Monaco. They also attach **Exhibit G**, which provides a contribution rate of $.05, but page 7 appears to have been lifted from another document (namely the National MLA (Defendants' Exhibit B)) and is thus unlike Exhibit C. The document purports to have been executed by both principals. Plaintiffs contend that Exhibit G, which is identical to Plaintiffs' Exhibit 2, is the final MLA. Defendants contend that Exhibit C is the final MLA. Both positions inhere with foundational problems (defendants accuse plaintiffs of forging Exhibit G) but because the differences between the documents do not present a dispute of material fact, these difficulties are disregarded here.

7

mean that terms were reached as to wages and fringe benefits, either by written amendment to the MLA as in Five Star Laundry, through oral agreements, customary norms, or by other written agreement not formalized as amendments to the MLA.

Because the MLA was unequivocal that United Temps was required to contribute to the Severance Fund, the question is what to make of the blank contribution rate in Exhibit C. This is the classic example of a contract where "one of those gaps 'crying out to be filled' exists . . . ." *Pabst Brewing*, 161 F.3d at 442. *See* RESTATEMENT 2D (CONTRACTS) § 204 ("When the parties to a bargain sufficiently defined to be a contract have not agreed with respect to a term which is essential to a determination of their rights and duties, a term which is reasonable in the circumstances is supplied by the court."); *cf. Freeman v. Mayer*, 95 F.3d 569, 573 (7th Cir. 1996) ("[T]he courts have become more willing to look to the overall intention of the parties to enter into an agreement and to infer terms that may not appear on the face of the writings."). This well established principle is sufficient to resolve this case on summary judgment inasmuch as there is no evidence in the record that suggests anything but that the MLA required Temps to contribute to the Severance Fund and no evidence other than the amount intended was $.05 per employee per hour.[3]

---

[3]Plaintiffs point to this conclusion through the doctrine that "[e]mployers may adopt a collective bargaining agreement by a course of conduct." *Robbins v. Lynch*, 836 F.2d 330, 332 (7th Cir. 1988); "All that is required is conduct manifesting an intention to abide and be bound by the terms of an agreement." *Id.*; *see also NLRB v. Haberman Construction Co.*, 641 F.2d 351, 355-57 (5th Cir. 1981); *Carpenters Amended & Restated Health Benefit Fund v. Holleman Construction Co.*, 751 F.2d 763, 770 (5th Cir. 1985); *Trustees of Atlanta Iron Workers, Local 387 Pension Fund v. So. Stress Wire Corp.*, 724 F.2d 1458, 1459 (11th Cir. 1983). Specifically, plaintiffs contend that (1) Simon admitted the existence of an agreement requiring Temps to make Severance Fund contributions in an October 26, 2002 letter in which Simon sought to exclude certain employees from the MLA; (2) Temps acknowledged their contribution obligation by remitting payment in April 2002 of $2,553.21 in partial satisfaction of that obligation; and (3) Temps further acknowledged its contribution obligation by failing to deny the existence of a properly executed agreement requiring Temps to make contributions to the Severance Fund during negotiations with

8

In light of the foregoing, plaintiffs' motion for summary judgment with respect to Temps is granted.

II. **National**

Plaintiffs seek to enforce a separate MLA entered into between the Union and National. The parties do not dispute that plaintiffs' Exhibit B and defendants' Exhibit 3 are identical, genuine copies of the parties' MLA. National argues that it is entitled to summary judgment because it did not employ "eligible employees" who were covered by the MLA but, rather, leased them from Temps. Plaintiffs maintain that National acted as a joint employer, leasing employees from Temps, and thus is jointly liable with Temps for contributions.

Both plaintiffs and National exclusively rely on *Vega v. Contract Cleaning*, 2004 WL 2358274 (N.D. Ill.). Although *Vega*, a case under the Fair Labor Standards Act ("FLSA"), denied summary judgment on the basis that a defendant could be liable as a joint employer even though it did not hire, fire or pay the workers, *Vega* offers no discussion of the applicability of the doctrine to ERISA cases.[4] The proper inquiry is

---

the Union regarding the allegedly delinquent contributions. Although these facts confirm that Temps intended to be bound, they are unnecessary because there is no dispute of fact that an MLA was entered into. The issue is simply one of contract interpretation.

[4]Other courts have held that joint employer cases under FLSA are not sufficiently analogous to ERISA to warrant their application thereto. *See Olivieri v. P.M.B. Const., Inc.*, 2005 WL 2037349 (E.D.N.Y. 2005) (observing that whereas the FLSA commands employers to pay a specified wage, ERISA does not obligate employers to provide pension plans; instead, the obligation to do so is purely contractual in nature); *Solomon v. Klein*, 770 F.2d 352 (3d Cir. 1985) (rejecting the analogy between FLSA and ERISA cases and refusing to impose personal liability on corporate officer unless corporate veil is pierced).

9

whether National is subject to joint liability under ERISA.

Courts, including most recently the Seventh Circuit, have held that the term "employer" does not include joint employers with non-contractual obligations to contribute to pension plans. *See Transpersonnel, Inc. v. Roadway Exp., Inc.*, __F.3d __, 2005 WL 2063973 (7th Cir. 2005); *Rheem Mfg. Co. v. Cent. States, SE & SW Areas Pension Fund*, 63 F.3d 703, 707 (8th Cir. 1985); *see also Bleilier v. Cristwood Constr., Inc.*, 72 F.3d 13 (2d Cir. 1995) (holding surety who was non-signatory to collective bargaining agreement was not liable for contributions under Section 515); *Greenblatt v. Delta Plumbing & Heating Corp.*, 68 F.3d 561 (2d Cir. 1995) (holding contractor who was non-signatory to collective bargaining agreement was not liable for contributions under Section 515). Thus, non-signatories to a collective bargaining agreement cannot be held liable for contributions based solely on their purported joint employer status. *Id.*

This case, however, poses a different question from those cited above because, while National is not a signatory of Temps' MLA, it did sign a separate MLA that contractually obligated itself to make contributions to the Severance Fund. As such, the question is whether a collective bargaining agreement signatory, who does not directly employ workers within the agreement's employee eligibility clause but instead leases eligible employees from a third-party, is an "employer" as defined by ERISA.

ERISA broadly defines an employer as "any person acting directly as an employer, or indirectly in the interest of the employer." 29 U.S.C. § 1002(5). This definition is one of "general application" and applies whether only one or more than one putative ERISA "employer" is asserted. *Roadway Express*, 2005 WL 2063973 (N.D. Ill.). Based on this

10

definition, National is an ERISA "employer." It is undisputed that National leased workers from Temps that were within the recognition clause of National's MLA. (*Id.* ¶ 5). Although National was acting in its own interest by leasing Temps's employees, it was also acting indirectly in the interest of Temps. As a consequence, National is a joint employer of the employees it leased from Temps and is liable for Severance Fund contributions for those employees consistent with the terms of its MLA with the Union.[5]

This finding is supported by the Seventh Circuit's recent decision in *Roadway Express*. In *Roadway Express*, a lessor sought a declaratory judgment that its lessee was an employer of the leased workers for purposes of withdrawal liability under a multiemployer plan governed by ERISA. 2005 WL 2063973 (N.D. Ill.). The Seventh Circuit observed that in ERISA cases, "the appropriate inquiry is whether the alleged employer had an obligation to contribute [to the pension fund] as well as the nature of that obligation." *Id.* Since the lessee had no agreement with the Union and no contractual obligation to contribute to the pension fund, the lessee could not be considered an "employer" under ERISA. *Id.* The corollary of the holding of *Roadway Express* is clear, however: a lessee that has assumed a contractual contribution obligation is an "employer" under ERISA and may be held liable for delinquent contributions.

Accordingly, plaintiffs' motion for summary judgment with respect to National is granted.

---

[5] National is not, however, an "employer" of those workers employed by Temps but not leased to National. There is no evidence that National was in any way acting indirectly in the interests of Temps with respect to those workers.

11

### III. United Maintenance Company

Plaintiffs seek to impute liability on United Maintenance Company based solely on United Maintenance Company's remittance of an April 2002 payment on behalf of Temps and National. *See* Defs. L.R. 56.1 ¶ 24; Pfs. Response to Defs. LR 56.1 ¶ 24. But plaintiffs have failed to cite any authority or present any argument as to why United Maintenance Company's alleged status as paymaster for Temps and National is sufficient to subject them to liability. National did not execute a collective bargaining agreement providing for contributions to the Severance Fund and therefore has no independent obligation to make contributions to the Severance Fund. *See also Central States, Southeast & Southwest Areas Pension Fund v. McClelland, Inc.*, 23 F.3d 1256, 1258 (7th Cir. 1994) (holding that it is the "collective bargaining agreements [which] establish the employer's obligation to the pension fund.").

### ORDER

For the reasons stated above, plaintiffs' motion for summary judgment (#30) is granted as to National and Temps. Defendants' motion (#32) is denied with respect to National and Temps and granted with respect to United Maintenance Company. The parties are directed to confer in order to submit a proposed judgment order, agreed to in form, calculating the amounts of contributions owed. A status hearing will be called on February 21, 2006.

Dated: February 2, 2006    Enter: _____
JOAN HUMPHREY LEFKOW
United States District Judge

12